[No. 29327-3-I. Division One. December 6, 1993.]

THE STATE OF WASHINGTON, *Respondent,* v. MICHAEL ROSS, *Appellant.*

*Suzanne Lee Elliott* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Jennifer Gilman, Deputy,* for respondent.

FORREST, J. — Michael Ross (Michael) was driving his car while wearing a set of headphones. Michael's identical twin brother, Mark, sat in the front passenger seat. Officers Graham and Norton, seeing Michael with the headphones, stopped Michael's car. Officer Graham explained why he had stopped him and asked Michael for his license and proof of insurance. Michael replied he did not have either with him and carried no identification.

Officer Graham asked Michael to step out of the car. During the questioning, Michael behaved strangely, clenching his fists and putting his hands in his pockets. Norton searched Michael's person and found a Washington State identification

card for "Michael Ross". The testimony indicates Michael either denied knowing he had the card or did not respond.[1]

Officer Graham, perceiving a threat from Michael's behavior and demeanor, had Michael lean against the police car with his legs spread. As the level of physical interaction between Officer Graham and Michael increased, Mark got out of the car and grabbed Officer Norton. All four men got into a wrestling match.

Subsequently, both brothers broke free and Michael locked himself in his car. The officers, having called in backup, tried to get Michael out of the car by breaking its windows. Seeing Michael reach beneath the seat and pull out a hatchet, both officers drew their revolvers. Eventually Michael unlocked the door and was forcefully pulled out of the car and arrested.

The State charged the brothers with assaulting an officer while he was performing his official duties under RCW 9A.36-.031(1)(g). At trial neither Officer Graham nor Officer Norton could identify Michael as the driver. The jury acquitted Mark but found Michael guilty of one count of third degree assault. Michael received a sentence of 12 days based on an offender score of 0.

This appeal timely followed.

## STATEMENT OF THE ISSUES

1. Is there sufficient evidence that a jury could have identified Ross as the driver of the car?

2. Did the trial court err when it instructed the jury that the "actual danger" standard applies to RCW 9A.36.031(1)(g)?

## SUFFICIENCY OF THE EVIDENCE

Michael Ross contends that the State failed to prove a required element of the assault charge, the identity of the assailant,[2] because none of the officers involved in the arrest could testify that he was the driver. We disagree.

---

[1] At trial Michael testified he suffered "memory problems" stemming from an earlier accident.

[2] *State v. Rich*, 63 Wn. App. 743, 821 P.2d 1269 (1992).

■ "The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). The State is entitled to all reasonable inferences arising from the evidence.[3]

The State showed that it was the driver who assaulted Officer Graham. Both officers testified it was the driver who swung his fists at Officer Graham. Two witnesses also identified the driver as the one involved with Officer Graham.

Officer Graham retrieved a Washington State identification card from the driver bearing the name "Michael Ross". The most reasonable inference would be that Michael Ross and the driver were the same person. Further, Officer Norton testified that he heard the passenger refer to the driver as "Mike". Officer Blanco, who was involved in arresting the passenger, testified that the passenger identified himself as "Mark Tracy Ross".

Finally, each brother testified as to his location in the car and as to his respective interaction with each officer. Michael identified himself as the driver and as the individual who scuffled with Officer Graham. Mark identified himself as the passenger and Michael as the driver.

Viewing the evidence in the light most favorable to the State and granting the State all reasonable inferences, sufficient evidence exists to show Michael was the driver and the individual who assaulted the officer.

"ACTUAL DANGER" INSTRUCTION

The court instructed the jury, in part, as follows:

It is a defense to a charge of assault in the third degree that the force used was lawful as defined in this instruction.

The use of force upon or toward a uniformed police officer performing his official duties is only lawful when:

(a) used by a person who is *actually about to be seriously injured*[.]

---

[3]*State v. Partin*, 88 Wn.2d 899, 901-02, 567 P.2d 1136 (1977).

(Italics ours.) Michael assigned error to this instruction arguing that he was entitled to an instruction derived from WPIC 17.04 (Supp. 1986)[4] which allows a defendant to use force when he has a reasonable belief that he is about to be injured.[5] We disagree.

Both parties agree that no case law exists construing the proper self-defense instruction in the context of RCW 9A.36-.031(1)(g), nor has our research disclosed any. However, in light of *State v. Westlund*, 13 Wn. App. 460, 466-67, 536 P.2d 20, 77 A.L.R.3d 270, *review denied*, 85 Wn.2d 1014 (1975); *State v. Holeman*, 103 Wn.2d 426, 430, 693 P.2d 89 (1985); *Seattle v. Cadigan*, 55 Wn. App. 30, 776 P.2d 727, *review denied*, 113 Wn.2d 1025 (1989), the court's instruction was correct.

The relevant portions of RCW 9A.36.031 now read as follows:

> (1) A person is guilty of assault in the third degree if he or she, under circumstances not amounting to assault in the first or second degree:
> (a) With intent to prevent or resist the execution of any lawful process or mandate of any court officer or the lawful apprehension or detention of himself or another person, assaults another; or
> . . . .
> (g) Assaults a law enforcement officer or other employee of a law enforcement agency who was performing his or her official duties at the time of the assault.

---

[4]WPIC 17.04, which provides the standard self-defense instruction and does not purport to operate in the context of law enforcement personnel, reads in relevant part:

"If a person acting as a reasonably prudent person mistakenly believes himself . . . to be in danger of injury . . . he . . . has the right to defend himself . . . by the use of lawful force against that apparent injury . . . even if he . . . is not actually in such danger."

[5]Michael's proposed instruction reads in relevant part:

"The use of or attempt to use force upon or toward the person of another is lawful when used or attempted by a person who reasonably believes that he is about to be injured . . . when the force is not more than is necessary."

An identical claim under the predecessor statute to subsection (a)[6] was unequivocally rejected in *State v. Westlund, supra* at 466:

> We hold, therefore, that in a lawful arrest neither the arrestee nor the bystander is entitled to rely upon appearances. A reasonable but mistaken belief that the arrestee was about to be seriously injured or that the arrestee was entitled to protect himself from such danger is insufficient. An arrestee's resistance of excessive force by a known police officer, effecting a lawful arrest, is justified only if he was actually about to be seriously injured.

A similar view was expressed in *State v. Cadigan, supra* at 37:

> In a lawful arrest, the arrestee may not use physical force against the arresting officer unless the use of excessive force by the officer places the arrestee in *actual danger* of serious injury.

(Italics ours.) These cases clearly establish that in a charge under the current subsection (a), which is in material respects identical with its predecessor statute, the arrestee must be in "actual danger" to justify the use of force.

We find no reason to apply a different test under subsection (g), the charge at issue. One of the purposes of RCW 9A.36.031(1) was to prevent assaultive behavior which interferes with a police officer's obligation to insure a peaceful and orderly detention or arrest.[7] Subsection (g) was added to RCW 9A.36.031(1) in 1989 and fits within this original purpose. By including subsection (g) within third degree assault, the Legislature has clearly intended to expand the protection

---

[6]Former RCW 9.11.020(6), which reads in relevant part:

"Every person who, under circumstances not amounting to assault in the first degree —

". . . .

"(6) Shall assault another with intent to commit a felony, or to prevent or resist the execution of any lawful process or mandate of any court officer, or the lawful apprehension or detention of himself or another person; . . .

". . . .

"Shall be guilty of assault in the second degree . . .."

[7]*State v. Williams*, 29 Wn. App. 86, 90, 627 P.2d 581 (1981).

given law enforcement officers.[8] Additionally, one of the plain purposes of adding subsection (g) was to avoid fine and insubstantial distinctions between investigation, detention, and arrest, during all of which an officer should be protected from physical violence.

In this case, the defendant arguably could have been charged under subsection (a)[9] but the prosecutor, wisely wishing to avoid any issue as to exactly at what point the officer decided to detain and arrest Michael, used the broader and more inclusive subsection (g). The policy considerations are identical. As stated in *State v. Westlund, supra* at 467:

> However, in the vast majority of cases, as illustrated by the one at bar, resistance and intervention make matters worse, not better. They create violence where none would have otherwise existed or encourage further violence, resulting in a situation of arrest by combat. Police today are sometimes required to use lethal weapons for self-protection. If there is resistance on behalf of the person lawfully arrested and others go to his aid, the situation can degenerate to the point that what should have been a simple lawful arrest leads to serious injury or death to the arrestee, the police or innocent bystanders. Orderly and safe law enforcement demands that an arrestee not resist a lawful arrest and a bystander not intervene on his behalf unless the arrestee is actually about to be seriously injured or killed.

This reasoning is explicitly approved in *State v. Holeman*, 103 Wn.2d 426, 430, 693 P.2d 89 (1985). We hold that when charged with assault in the third degree under RCW 9A.36-.031(1)(g) the defendant must show that he was "actually about to be seriously injured" to be entitled to resist the officer with force.

A citizen's liberty interest does not justify physical resistance to uniformed officers. The place to settle such disputes is the courtroom, not on the street, and with law, not force, as the arbitrator.

---

[8]*State v. Belleman*, 70 Wn. App. 778, 784, 856 P.2d 403 (1993) ("[A]dding (g) to the statute merely expanded the scope of behavior that could be charged as third degree assault.").

[9]Indeed, Michael was originally charged under both subsections (a) and (g), later amended to only (g).

Affirmed.

SCHOLFIELD and BAKER, JJ., concur.