980 P.2d 235 (1999)
STATE of Washington, Respondent,
v.
Alonzo BRADLEY, Appellant.
No. 41761-4-I.
Court of Appeals of Washington, Division 1.
May 24, 1999.
Publication Ordered July 6, 1999.
*237 Kathleen Barry, David Koch, Nielsen Broman & Associates, Seattle, for Appellant.
Brian McDonald, King County Prosecuting Atty's Office, Seattle, for Respondent.
*236 APPELWICK, J.
Bradley was convicted of custodial assault following an altercation with correctional officers while he was an inmate in the King County Jail. On appeal, Bradley challenges the jury instruction given on self-defense that states that "actual danger of serious injury" is required for the use of force upon a correctional officer. Bradley also claims that he received ineffective assistance of counsel because his trial attorney proposed the challenged self-defense instruction. Finally, Bradley claims that there was not sufficient evidence to support his conviction. We hold that (1) the doctrine of invited error precludes Bradley's challenge to the jury instruction, (2) the objective self-defense instruction his trial counsel proposed was proper, thus not deficient, and (3) there was sufficient evidence to support the conviction. We affirm.

FACTS
Alonzo Bradley was incarcerated in the King County Jail on May 15, 1997. That evening, at approximately 10:30 p.m., Bradley came out of his cell, sat down, stated that he was not feeling well and requested to see a nurse. Corrections Officer Glen Redman determined that Bradley's problems were not of an emergency nature. Officer Redman indicated that he would call the infirmary and told Bradley to go back to his cell. Bradley refused and reclined on the stairs outside his cell. Four more correctional officers were summoned and they attempted to get Bradley to return to his cell. Bradley still refused to move and grew more agitated. Sergeant Snodgrass testified that he spoke to Bradley and warned him at least three times that if he did not voluntarily return to his cell, he would be sprayed with pepper spray. When Bradley did not move, Sergeant Snodgrass applied the pepper spray to Bradley's face.
The officers testified that the pepper spray did not initially effect Bradley. Officer Morey testified that Sergeant Snodgrass "reached up to whip the foam into inmate Bradley's eyes." Sergeant Snodgrass testified that he rubbed the spray directly in Bradley's eye with his thumb to make it work faster. According to the officers, Bradley then started "flailing and fighting and screaming and rolling around on the stairs." The officers then struggled to restrain Bradley by laying on him and pulling his arms behind his back to cuff him. Officer Redman placed all of his weight on the back of Bradley's legs. During this struggle, Bradley bit Sergeant Snodgrass on the arm.
Conversely, Bradley testified that he was already in handcuffs when Sergeant Snodgrass pepper sprayed his face and rubbed it into his eye. Bradley claims that the officers then jumped on him and that their weight prevented him from breathing. Bradley *238 claims that at the time he bit Sergeant Snodgrass, the officers were covering his mouth and nose and he believed that they were going to kill him. Also, two other inmates testified that they saw the incident and that Bradley was yelling, "I can't walk. I can't breathe," and that the guards sprayed Bradley with mace and hit his head against the staircase bars.
Bradley was charged with two counts of custodial assault under RCW 9A.36.100(1)(b), pertaining respectively to the alleged assaults on Sergeant Snodgrass and Officer Redman. The case was tried before a jury, the Honorable Steven Scott presiding.
The jury was instructed on self-defense. Bradley's trial counsel proposed WPIC 17.02.01, which states that a person may use force in self-defense "only if the person being arrested is in actual danger of serious injury." And later, while reviewing the trial court's modified version of WPIC 17.02.01, Bradley's counsel specifically agreed to the requirement of actual danger.
The jury found Bradley guilty on Count I and not guilty on Count II. Bradley now appeals his conviction.

ANALYSIS
The Doctrine of Invited Error
The doctrine of invited error applies when an instruction given by the trial court contains the same error as the defendant's proposed instruction. State v. Neher, 112 Wash.2d 347, 352-53, 771 P.2d 330 (1989); see also State v. Jacobson, 74 Wash. App. 715, 724, 876 P.2d 916 (1994), rev. denied, 125 Wash.2d 1016, 890 P.2d 20 (1995); State v. Ahlquist, 67 Wash.App. 442, 447-48, 837 P.2d 628 (1992); State v. Miller, 40 Wash.App. 483, 486, 698 P.2d 1123 (1985), rev. denied, 104 Wash.2d 1010 (1985). As such, the defendant may challenge the self-defense instruction in the context of an ineffective assistance claim.
Bradley proposed WPIC 17.02.01, which the trial court revised to state:
The use of force upon or toward the person of a known Correctional officer is lawful only when the person using the force is in actual danger of serious injury as a result of the use of unlawful force by the officer. The person using force may employ such force and means as a reasonably prudent person would under the same or similar circumstances as they appeared to the person, taking into consideration all of the facts and circumstances known to the person at the time of the incident.
In so instructing the jury, the trial court held Bradley to an objective standard for his claim of self-defense. Bradley's trial counsel agreed that the jurors had to find that Bradley was in actual danger of serious injury as a result of unlawful force. Therefore, Bradley is precluded from directly challenging the jury instruction on appeal and our review is restricted to whether or not Bradley received effective assistance of counsel.
Ineffective Assistance of Counsel
In order to establish ineffective assistance of counsel, the defendant must meet a two-pronged test: the defendant must show (1) that the counsel's representation fell below an objective standard of reasonableness based on a consideration of all the circumstances; and (2) that defense counsel's deficient representation prejudiced the defendant. State v. McFarland, 127 Wash.2d 322, 334-35, 899 P.2d 1251 (1995), citing Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
Bradley claims that his trial counsel fell below an objective standard of reasonableness when he proposed a self-defense jury instruction that required a finding of actual danger of serious injury. He argues that a more subjective and less strict "reasonable belief in imminent harm" instruction is appropriate when the defendant is in a custodial facility at the time of the assault. He is mistaken.
When the victim is not a law enforcement officer, the standard for self-defense contains both subjective and objective components. State v. Janes, 121 Wash.2d 220, 238, 850 P.2d 495 (1993). The jury is called upon to evaluate whether the defendant had a reasonable belief in imminent danger in light of all the defendant knew and saw at that *239 time. Janes, 121 Wash.2d at 240, 850 P.2d 495. In such cases, actual imminent danger is not required. State v. LeFaber, 128 Wash.2d 896, 899, 913 P.2d 369 (1996).
However, Washington cases have held that a reasonable but mistaken belief of imminent danger is an insufficient justification for use of force against a law enforcement officer engaged in performance of official duties. State v. Valentine, 132 Wash.2d 1, 20-21, 935 P.2d 1294 (1997); State v. Holeman, 103 Wash.2d 426, 430, 693 P.2d 89 (1985); State v. Ross, 71 Wash.App. 837, 843, 863 P.2d 102 (1993). And in Ross, this Court stated that "[a]n arrestee's resistance of excessive force by a known police officer, effecting a lawful arrest, is justified only if he was actually about to be seriously injured." Ross, 71 Wash.App. at 842, 863 P.2d 102; see also City of Seattle v. Cadigan, 55 Wash.App. at 37, 776 P.2d 727. The stricter self-defense standard is in place to protect correctional officers and third parties from the dangers of physical violence related to arrests. State v. Ross, 71 Wash.App. 837, 840-43, 863 P.2d 102 (1993); State v. Valentine, 132 Wash.2d 1, 20, 935 P.2d 1294 (1997); State v. Westlund, 13 Wash.App. 460, 536 P.2d 20, rev. denied, 85 Wash.2d 1014 (1975).
Bradley nonetheless argues that the given instruction is not applicable to him, an inmate, but rather is only applicable when an arrestee faces an attempt to inflict injury on him or her during the course of an arrest. Bradley further claims that the less strict "reasonable belief of imminent harm" standard is appropriate in custodial assault cases because correctional officers and third parties are not at risk in the custodial setting. We are not persuaded. The dangers to law enforcement officers and the needs for security are heightened in both the arrest setting and the custodial setting.
Bradley also argues that his position is supported by State v. Hutchinson, 135 Wash.2d 863, 959 P.2d 1061 (1998). In Hutchinson, the Supreme Court of Washington held that although the jury in an aggravated first degree murder case could have interpreted the pattern instruction to require actual imminent danger to the defendant, the jury was also instructed that the defendant was entitled to act on appearances and that actual danger was not required, thus the instructions in their entirety properly stated the law of self-defense. Hutchinson, 135 Wash.2d at 875, 959 P.2d 1061. However, Bradley's reliance on Hutchinson is misplaced because that case did not address the issue of the appropriate standard for self-defense in a custodial assault case.
Finally, Bradley relies upon State v. Miller, 89 Wash.App. 364, 949 P.2d 821, for the proposition that actual danger is not required before an inmate assaults a custodial officer in self-defense. In Miller, the court reversed an inmate's conviction for assaulting a jailer because the jury was not properly instructed that the state bears the burden of proving the absence of self-defense. In dicta, the Miller court states that evidence of self-defense is evaluated under a mixed subjective and objective standard, citing State v. Walden, 131 Wash.2d 469, 932 P.2d 1237 (1997) and a line of cases which did not involve assaults on police or correctional officers.
The Miller court overlooked State v. Ross, 71 Wash.App. 837, 843, 863 P.2d 102 (1993), which was decided four years before Walden and has remained good law. Again, Ross held that a reasonable but mistaken belief of imminent danger is an insufficient justification for use of force against a law enforcement officer engaged in performance of official duties, thus a finding of actual danger of serious injury under an objective standard is required. Ross, at 842, 863 P.2d 102; see also State v. Valentine, 132 Wash.2d 1, 20-21, 935 P.2d 1294 (1997); State v. Holeman, 103 Wash.2d 426, 430, 693 P.2d 89 (1985). Therefore, we conclude that the dicta in Miller on this issue was in error and we decline to follow it.
Accordingly, we find that Bradley's trial counsel was not deficient for proposing and accepting a self-defense jury instruction that is entirely consistent with the case law.
Sufficiency of the Evidence
The due process clauses of the Fourteenth Amendment to the United States Constitution and Article I, § 22 of the Washington *240 State Constitution protect an individual from conviction of a crime unless the government proves each element of the offense beyond a reasonable doubt. In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).
Evidence is sufficient if, when viewed in the light most favorable to the State, a rational trier of fact could find the elements of the crime beyond a reasonable doubt. State v. Green, 94 Wash.2d 216, 616 P.2d 628 (1980). "All reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992).
Because Bradley raised the issue of self-defense, the State was required to disprove that claim as part of its burden. State v. Acosta, 101 Wash.2d 612, 616, 683 P.2d 1069 (1984). The trial court instructed the jury that self-defense was available to Bradley only if he faced "unlawful force." Therefore, the State was required to prove that the officers used lawful force.
Bradley argues that "the State failed to prove the absence of self-defense because the State failed to show that Sergeant Snodgrass' efforts to force pepper spray directly into Bradley's eyes was necessary, and therefore `lawful force'." However, viewing the evidence in the light most favorable to the State, sufficient evidence was presented at trial to allow the jury to conclude that the correctional officers used lawful force in attempting to direct Bradley back into his cell.
First, Bradley refused numerous requests to return to his cell and was warned that force would be used if he continued to refuse. Second, Sergeant Snodgrass testified that he used the pepper spray as a last resort. Third, the officers physically restrained Bradley in order to place him in handcuffs because he was "fighting and swinging and kicking." And fourth, Officer Redman testified about the jail protocol for controlling unruly inmates, including the use of pepper spray. The jury could conclude from this evidence that the officers' use of such force in order to control a noncompliant inmate in the King County Jail was lawful beyond a reasonable doubt.
Affirmed.
BAKER and COX, JJ., concur.