FILED
COURT OF APPEALS
DIVISION II

2015 MAR 17 AM 8:41

STATE OF WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45133-6-II |
| Respondent, | |
| v. | |
| MICHAEL JOSEPH SMITH, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Michael Joseph Smith appeals his convictions for second degree assault and third degree assault of a police officer. He argues that the trial court violated his Fourteenth Amendment due process right when it denied his request for a jury instruction on self-defense against a police officer acting within the scope of his duties. Because Smith presented insufficient evidence that he was in actual and imminent danger of serious injury, the trial court did not abuse its discretion by denying Smith's self-defense instruction. Accordingly, we affirm.

## FACTS

On April 21, 2013, a Clark County deputy sheriff was patrolling Highway 99 in Vancouver in a marked police car and wearing a standard uniform. During his patrol, the deputy saw Smith at the intersection of Highway 99 and 107th Street, waiting for the light to turn in his favor at a crosswalk. The deputy's light was green, meaning that Smith's traffic signal for crossing was red. Smith jogged across the roadway in front of the deputy while the deputy's light was green, and headed to a nearby convenience store.

The deputy proceeded to the store to contact Smith about his jaywalking. As the deputy pulled into the parking lot, Smith was nearing the door; the deputy used his air horn to get Smith's

attention and signaled him over to the patrol car. After blowing the horn, Smith looked at the deputy, who said "Come here" and motioned with his hands for Smith to approach the vehicle. 1 Verbatim Report of Proceedings (VRP) at 61. Smith disregarded the command and walked into the store.

The deputy followed Smith into the store and instructed him to step outside to talk about his jaywalking. Smith responded, "I don't think so." 1 VRP at 63. The deputy approached Smith, said "Come on," and motioned for Smith to follow him outside. 1 VRP at 63. When the deputy approached within three or four feet, Smith turned to face him and put up his balled-up fists. The deputy responded by reaching between Smith's hands, grabbing his jacket, and running him towards the back of the store to "try[] to trip him down and get him off balance." 1 VRP at 65. Once the deputy took Smith down to a seated position, he reached out to grab Smith's left hand to roll him over and handcuff him. Smith then punched the deputy in the mouth, which required the deputy to get stitches to repair his split lip.

The State charged Smith with second degree assault, RCW 9A.36.021, and third degree assault, RCW 9A.36.031.[1] At trial, the State's witnesses testified consistent with the above stated facts. Smith testified that he did not leave the store at the deputy's request because he does not trust cops, and did not want to be away from the security camera and the witness in the store. He stated that he felt "threatened" only when the deputy began moving towards him. 1 VRP at 141. He also admitted that he was already in a defensive stance when the deputy moved toward him,

---

[1] The legislature amended RCW 9A.36.031 in 2013. LAWS OF 2013, ch. 256, § 1. The amendments did not alter the statute in any way relevant to this case; accordingly, we cite the current version of the statute.

that he punched the deputy because he felt that the deputy was "violating" his "rights," and "[t]o get [the deputy] to let go of [him]." 1 VRP at 141, 143.

Smith proposed a self-defense jury instruction based on 11 *Washington Criminal Pattern Jury Instruction: Criminal* 17.02.01 at 253 (3d ed. 2008), which provides that it is a defense to the charge of assault if the defendant used lawful force when resisting arrest.[2] The trial court rejected Smith's proposed instruction because he had not presented sufficient evidence that he was in fear of "actual and imminent serious injury" by a police officer's use of "excessive force." 2 VRP at 191. The jury convicted Smith of second degree and third degree assault. As to the second degree assault conviction, the jury found by special verdict that Smith committed the crime "against a law enforcement officer who was performing his . . . official duties at the time of the crime" and that Smith "kn[e]w the victim was a law enforcement officer." Clerk's Papers (CP) at 100.

The jury's special verdict finding permitted the trial court to enter an exceptional sentence of 1 year and 1 day of confinement, followed by 18 months of community custody. During

---

[2] Smith's proposed self-defense instruction stated as follows:

> It is a defense to the charges of Assault in the Second Degree and Assault in the Third Degree that force used was lawful as defined in this instruction.
>
> A person may use force to resist an arrest by someone known by the person to be a police officer only if the person being arrested is in actual and imminent danger of serious injury from an officer's use of excessive force. The person may employ such force and means as a reasonably prudent person would use under the same or similar circumstances.
>
> The State has the burden of proving beyond a reasonable doubt that the force used by the defendant was not lawful. If you find that the State has not proved the absence of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty.

Clerk's Papers at 30.

sentencing, the trial court merged Smith's third degree assault conviction into his second degree assault conviction. Smith appeals his judgment and sentence.

## ANALYSIS

Smith argues that the trial court erred when it declined to give his self-defense instruction because the evidence at trial supported giving it. We conclude that the trial court did not abuse its discretion in denying Smith's self-defense instruction.

### I. Standard of Review

Our standard of review when the trial court has refused to instruct the jury on self-defense depends on why the court refused the instruction. *State v. Read*, 147 Wn.2d 238, 243, 53 P.3d 26 (2002). We review for abuse of discretion a trial court's refusal "'to give a self-defense instruction because it found no evidence supporting the defendant's subjective belief of imminent danger of great bodily harm.'" *State v. George*, 161 Wn. App. 86, 94, 249 P.3d 202 (quoting *Read*, 147 Wn.2d at 243), *review denied*, 172 Wn.2d 1007 (2011).

### II. Self-Defense Involving a Police Officer

When a defendant claims self-defense for using force against a law enforcement officer, the general self-defense rule does not apply. *State v. Calvin*, 176 Wn. App. 1, 14, 316 P.3d 496 (2013) (setting forth the general test for self-defense that generally it "is justified if there is an appearance of imminent danger"); *see also State v. Bradley*, 141 Wn.2d 731, 737, 10 P.3d 358 (2000); RCW 9A.16.020(3). The use of force in self-defense against an arresting law enforcement officer is permissible only when the arrestee *actually* faces an imminent danger of serious injury or death. *Calvin*, 176 Wn. App. at 14; *Bradley*, 141 Wn.2d at 737. As our Supreme Court explained, "'[o]rderly and safe law enforcement demands that an arrestee not resist a lawful arrest

4

. . . unless the arrestee is actually about to be seriously injured or killed.'" *Bradley*, 141 Wn.2d at 738 (quoting *State v. Holeman*, 103 Wn.2d 426, 430, 693 P.2d 89 (1985)). Our Supreme Court explained the policy rationale for this rule:

> "[T]he arrestee's right to freedom from arrest without excessive force that falls short of causing serious injury or death can be protected and vindicated through legal processes, whereas loss of life or serious physical injury cannot be repaired in the courtroom. However, in the vast majority of cases . . . resistance and intervention make matters worse, not better. They create violence where none would have otherwise existed or encourage further violence, resulting in a situation of arrest by combat."

*Holeman*, 103 Wn.2d at 430 (alteration in original) (quoting *State v. Westlund*, 13 Wn. App. 460, 467, 536 P.2d 20 (1975)).

The same standard for self-defense against a police officer established in *Holeman* and *Westlund* applies to the third degree assault of a police officer charged under RCW 9A.36.031(1)(g). *State v. Ross*, 71 Wn. App. 837, 840, 863 P.2d 102 (1993). In a case such as this, a jury is properly instructed that the use of force upon or toward a law enforcement officer "is only lawful when . . . used by a person who is actually about to be seriously injured." *Ross*, 71 Wn. App. at 840 (internal quotation marks omitted).

Smith asserts that the evidence was sufficient to give his self-defense instruction because he testified at trial that "he felt threatened by the deputy and that he was afraid that the deputy might hit him." Br. of Appellant at 5. But his testimony goes to the appearance of danger, or his perception of the danger, not the existence of actual danger. *Calvin*, 176 Wn. App. at 14. Smith testified, "[the deputy] started moving towards me. I felt it seemed a little aggressive. [The deputy] grabbed me by the shirt and lifted me up and looked at my eyes[. H]e was just looking in my eyes. I felt threatened." 1 VRP at 140. And Smith failed to testify that he "face[d] an imminent danger

of serious injury or death"; his vague statements about feeling threatened fall far short of this standard. *Calvin*, 176 Wn. App. at 14.

Under *Calvin*, this evidence is insufficient. Accordingly, the trial court did not abuse its discretion in concluding that the evidence was insufficient to support Smith's "'subjective belief of imminent danger of great bodily harm.'" *George*, 161 Wn. App. at 94 (quoting *Read*, 147 Wn.2d at 243). We hold that the trial court did not abuse its discretion in denying Smith's request for the self-defense instruction.

Accordingly, we affirm Smith's convictions and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Sutton, J.

We concur:

Johanson, C.J.

Maxa, J.