IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 37984-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ROY BRENT BOSWELL, JR., | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Roy Boswell appeals after being convicted of unlawful possession of a firearm in the second degree and two counts of second degree assault. He raises several argument that we reject. We affirm his convictions but remand for resentencing in light of *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021).

FACTS

Kristin Power made a call to 911 after being attacked from behind by Roy Boswell. She had been out with her youngest son and her friend, Ryan Buie, at the time when Boswell pulled up in a car. Boswell and Power had dated for a time in 2017 before recently breaking up.

Patrol officer Matthew Arasim arrived approximately 15 minutes after the call. He saw a red Hyundai Sonata parked in the alley behind Power's apartment building. There

was a loaded firearm under the left front tire of the Hyundai. The firearm was tested and functioned properly.

Power's jaw was broken from the assault and she had to go to the emergency room to get her jaw wired shut. While there, Power was asked routine questions about what happened from the doctor. She said she was punched on the right side of her face four times and threatened with a weapon.

The day after the assault, Power filed a petition for a protection order. In the petition, Power described Boswell punching her in the face repeatedly and pulling a gun on her friend Buie before running away and leaving his car. Power signed the petition under penalty of perjury.

The State charged Boswell with unlawful possession of a firearm in the second degree and two counts of assault in the second degree, one count for punching Power in the face and breaking her jaw and the other count for pointing a firearm at Buie. In addition, the State alleged a firearm enhancement and an aggravator for the charge related to Power and a firearm enhancement for the charge related to Buie. The State subsequently added a bail jumping charge after Boswell absconded to California.

While awaiting trial, Boswell made a number of jail calls to Power and to his mother. In these calls, he told Power he was "not taking that gun because that shit was

not on me when I got caught." Ex. 98. He also told his mother he left the gun in the car. Power told Boswell she hoped he would beat it, referring to the charges.

At trial, Power and Buie denied that Boswell was the attacker. The State offered testimony from Officer Robert Hannity as impeachment evidence. Officer Hannity testified that Buie and Power both told him that Boswell had punched Power four times and had pulled a gun on Buie.

The State also had Power's petition for a protection order admitted as impeachment evidence. Boswell objected and argued that the petition was not relevant and cumulative. The trial court overruled the objection and noted that the petition contained key evidence pertinent to the charges.

After the State concluded its case, Boswell moved to dismiss the second degree assault charge related to Buie. He argued the State presented insufficient evidence to sustain the charge because Buie denied he was assaulted or that he saw a weapon. Boswell argued that Power's petition had been admitted only for impeachment purposes. The State argued there had been no limiting instruction and the petition was signed under penalty of perjury so it was not hearsay under ER 801(d)(1). The trial court denied Boswell's motion to dismiss and noted that the petition was a sworn statement and thus admissible as substantive evidence.

3

The parties submitted the case to the jury. It returned guilty verdicts on all counts and found that the State had proved the firearm enhancements and an aggravator beyond a reasonable doubt. The court sentenced Boswell to 129 months in prison, which included 72 months for the firearm enhancements. The sentence was based on a prior offense score of 3, comprised of three King County convictions. One was a 2016 unlawful possession of controlled substance (UPCS) conviction, another was a 2016 attempted unlawful possession of a firearm (UPFA) in the second degree conviction, and the other was a 2017 UPFA in the second degree conviction. The court imposed a mandatory $500 crime victim assessment fee, a $200 criminal filing fee, and a community custody supervision fee.

Boswell timely appeals.

## ANALYSIS

PETITION AS SUBSTANTIVE EVIDENCE

Boswell contends the trial court abused its discretion in allowing Power's petition for an order of protection to be admitted as substantive evidence under ER 801(d)(1), prior statement of witness. He argues the State did not show that the petition had a minimum level of trustworthiness. We decline to address this argument.

4

At trial, Boswell objected to admission of Power's petition as substantive evidence on two bases—lack of relevancy and cumulative. He did not argue that the petition lacked a minimal level of trustworthiness.

Generally, this court does not review an issue raised for the first time on appeal. RAP 2.5(a). There are three exceptions to this general rule: (1) the trial court lacked jurisdiction, (2) there was a failure to establish facts on which relief could be granted, or (3) there was a manifest error affecting a constitutional right. RAP 2.5(a)(1)-(3). Because the first two are clearly not at issue, we focus only on the third exception.

Under this exception, a defendant raising the error for the first time bears the burden of showing "(1) the error is manifest and (2) the error is truly of constitutional dimension." *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009). Boswell has failed to make such a showing here. Admission of hearsay sometimes implicates the constitutional confrontation clause rights of a defendant. *State v. Hieb*, 107 Wn.2d 97, 105-06, 727 P.2d 239 (1986). But because Power was a witness at the trial and subject to cross-examination, the confrontation clause rights of Boswell were not violated. *See State v. Makela*, 66 Wn. App. 164, 177, 831 P.2d 1109 (1992). Because Boswell cannot show that the unpreserved issue he seeks to raise qualifies as an exception under RAP 2.5(a), we decline to review the unpreserved claim of error.

5

INEFFECTIVE ASSISTANCE OF COUNSEL

Boswell contends his trial counsel was ineffective. He argues that his attorney performed deficiently when he failed to request a limiting instruction be given advising the jury that Power's petition was admitted only for impeachment. We disagree.

A criminal defendant is guaranteed effective assistance of counsel. WASH. CONST. art. I, § 22; U.S. CONST. amend. VI. Counsel is deemed ineffective if counsel's representation was deficient and there was resulting prejudice stemming from this deficiency. *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987).

Boswell argues that a limiting instruction would have been both appropriate and necessary for the jury's consideration of Power's petition. This argument shows a misunderstanding of hearsay. A prior inconsistent statement admitted under ER 613 solely for the purpose of impeaching the credibility of a witness is not substantive evidence and a limiting instruction is appropriate. However, statements admitted under ER 801(d)(1)(i) ("given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition") are not hearsay and are thus admissible as substantive evidence. Power's petition was given under oath subject to the penalty of perjury and was therefore admissible as substantive evidence.

A limiting instruction would be neither required nor appropriate here where the statement was admissible as substantive evidence. Defense counsel cannot be deficient for failing to request an inappropriate limiting instruction. *See State v. Bradley*, 96 Wn. App. 678, 685, 980 P.2d 235 (1999), *aff'd*, 141 Wn.2d 731, 10 P.3d 358 (2000). We reject Boswell's ineffective assistance of counsel argument.

SUFFICIENCY OF THE EVIDENCE

Boswell contends there was insufficient evidence to support the second degree assault conviction related to Buie and the two firearm enhancements. He argues the evidence does not show beyond a reasonable doubt that he was armed with a firearm during the confrontation with Power and Buie. We disagree.

Due process requires that the State prove each element of the crime beyond a reasonable doubt. *O'Hara*, 167 Wn.2d at 105. This standard also applies to any charged enhancement. *See State v. Dyson*, 189 Wn. App. 215, 225, 360 P.3d 25 (2015) (Any fact that, by law, increases the penalty for a crime is an element that must be submitted to the jury and found beyond a reasonable doubt.). The test for determining the sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A claim of insufficiency admits

7

the truth of all of the State's evidence. *Id.* All reasonable inferences must be drawn in favor of the State and interpreted most strongly against the defendant. *Id.*

Boswell's argument presupposes that Power's petition was not admissible as substantive evidence. As noted above, he is incorrect. Power's petition names Boswell as her attacker, describes the attack against her, and describes him pointing a gun and threatening Buie. This evidence sufficiently supports the second degree assault conviction related to Buie and both firearm enhancements. Yet additional evidence was admitted at trial supporting these verdicts.

The State admitted Boswell's jail telephone calls in which he discussed getting rid of the gun by his car. The State also showed a video of Power's attacker pointing something at Buie, causing him to back away. We conclude the State presented more than sufficient evidence to sustain the challenged conviction and enhancements.

LEGAL FINANCIAL OBLIGATIONS

Boswell contends the trial court erred in imposing certain legal financial obligations (LFOs) and interest on his nonrestitution LFOs. He argues the $200 criminal filing fee and the supervision fee are inappropriate because he is indigent. The State does not object to remanding for the trial court to strike the $200 criminal filing fee and the community supervision fee, but correctly notes that the interest provision of the judgment

explicitly exempts interest on nonrestitution obligations, consistent with RCW 10.82.090.

We accept the State's concessions and remand for the trial court to strike those two fees. *See State v. Ramirez*, 191 Wn.2d 732, 747, 426 P.3d 714 (2018) (criminal filing fee not imposable against indigent defendant); *State v. Dillon*, 12 Wn. App. 2d 133, 152, 456 P.3d 1199 (waivable community supervision fee struck where the record shows trial court intended to strike nonmandatory costs and fees), *review denied*, 195 Wn.2d 1022, 464 P.3d 198 (2020).

OFFENDER SCORE UNDER *BLAKE*

The parties addressed the recent case of *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021) in supplemental briefing. There, the Supreme Court declared Washington's UPCS statute unconstitutional.

Boswell requests that we remand for the trial court to vacate his 2016 UPCS King County conviction and direct the trial court not to count that conviction and a 2004 UPCS California conviction in his offender score. The State responds that the Pierce County Superior Court lacks the authority to vacate a King County Superior Court judgment, agrees that the 2016 UPCS conviction should not count in the offender score, and asserts that the 2004 UPCS California conviction was not counted because it had washed out. It

No. 37984-1-III
*State v. Boswell*

further responds that the 2016 UPFA second degree conviction should not have counted because it was an *attempt* and thus not a felony.

Our review of the record confirms the State's positions. And while the Pierce County Superior Court lacks the authority to vacate the 2016 King County Superior Court UPCS conviction, we direct it not to count that conviction in Boswell's amended offender score and to enter a notation in the amended judgment explaining that it was not counted in light of *Blake*.

In conclusion, we remand for the trial court to resentence Boswell with a new offender score. Assuming no intervening convictions, we agree with the State that Boswell's prior offense score should be a 1, comprised only of the 2017 UPFA in the second degree conviction.

Affirm the convictions but remand for resentencing.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, J.

WE CONCUR:

Pennell, C.J.

Staab, J.

10